IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GLAY LASHAWN KIMBLE #140538     :

   Plaintiff                                    :

  v.                                                   :     CIVIL ACTION NO. DKC-14-1216

MICHELLE AUTREY,[1] MEDICAL     :
  SUPERVISOR AT WCDC
                                                                   :

   Defendant

## MEMORANDUM OPINION

On April 16, 2014, self-represented Plaintiff Glay L. Kimble, then housed at the Wicomico County Detention Center ("WCDC"),[2] filed a civil rights action pursuant to 42 U.S.C. § 1983 seeking money damages and alleging that he has not been provided appropriate psychotropic medications by the contractual health care provider.[3] ECF No. 1.[4] Defendant has filed a Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 13) and Plaintiff has filed an opposition response thereto. ECF No. 15. No hearing is needed to resolve the issues raised in the Complaint. *See* Local Rule 105.6 (D. Md. 2014).

---

[1] The Clerk shall amend the docket to reflect Defendant's proper name.

[2] Plaintiff has been released from WCDC. ECF No. 6. He now reesides in North Carolina. ECF No. 16. It is unclear whether at the time of the incident Plaintiff was a pretrial detainee or had been convicted and was serving a sentence. This distinction is not material, however, because the constitutional protections afforded a pretrial detainee as provided by the Fourteenth Amendment are co-extensive with those provided to convicted prisoners by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992), citing *Martin v. Gentile*, 849 F. 2d 863, 870 (4th Cir. 1988). As a practical matter, the Fourth Circuit does not distinguish between the Eighth and Fourteenth Amendments in the context of a pretrial detainee's civil rights claim. *See Hill v. Nicodemus,* 979 F.2d 987, 990-92 (4th Cir. 1992).

[3] Conmed Healthcare Management is a corporation specializing in county-level correctional healthcare services. *See* http://www.healthgrades.com/group-directory/maryland-md/hanover/conmed-healthcare-management-inc-6598761c.

[4] Pagination based on the court's electronic case filing record is cited in this Memorandum Opinion.

**Preliminary Matter**

The crux of the Complaint is Plaintiff's allegation that while detained at WCDC he was denied the appropriate medication for mental illness. Once a party's competency has been brought to the court's attention, it is required to consider and decide the issue. *See Seibels, Bruce & Co. v. Nicke*, 168 F.R.D. 542, 543 (M.D.N.C. 1996). While Federal Rule of Civil Procedure 17(c)(2) allows the court to appoint a guardian *ad litem*, it does not compel it to do so, but rather grants it considerable discretion to issue an "appropriate order" to protect the interests of an unrepresented incompetent litigant.

Plaintiff is no stranger to Maryland's criminal courts; his history of arrests and convictions dates back to the late 1990s.[5] In December of 2013, he was charged in the Circuit Court for Wicomico County in Criminal Case No. 22K1400141 with armed robbery, first-degree assault, and theft under $1,000, and held pending trial at the WCDC.[6] He pleaded guilty to the theft on May 9, 2014, but received no sentence. He was thereafter released from custody and on May 17, 2014, notified the Clerk that he had moved to Salisbury, Maryland. ECF No. 6. Given Plaintiff's apparent ability to fully articulate his case, there is no requirement under Rule 17(c)(2) for appointment of a guardian to pursue the claim presented.

**Standard of Review**

Defendant has moved to dismiss or, in the alternative, for summary judgment. "'The purpose of a Rule 12(b)(6) motion [to dismiss] is to test the sufficiency of a complaint.'"[7] *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted). A Rule 12(b)(6)

---

[5] *See* http://casesearch.courts.state.md.us/inquiry/inquirySearch.jis.

[6] *See* http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=22K14000141&loc=48&detailLoc=K.

[7] Defendant argues that because Plaintiff has been released from custody and now receives social security disability income, his motion for leave to proceed in forma pauperis no longer is supported by the evidence. ECF 13-1, pp. 1-2. Assuming Plaintiff is receiving disability income (a fact not apparent in the record), the court would be inclined to grant in forma pauperis status to him based on the relatively low income level of disability income benefits.

motion constitutes an assertion by the defendant that, even if the facts that plaintiff alleges are true, the complaint fails, as a matter of law, "to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6).  Therefore, in considering a motion to dismiss under Rule 12(b)(6), a court must "accept[ ] as true the well-pled facts in the complaint and view[ ] them in the light most favorable to the plaintiff." *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011) (citation omitted).

Ordinarily, a court cannot consider matters outside the pleadings or resolve factual disputes when ruling on a Rule 12(b)(6) motion. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). If the court does consider matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."). This court deems it appropriate to consider the extraneous materials, as they are likely to facilitate disposition of this case. Accordingly, Defendant Autrey's motion shall be treated as a motion for summary judgment.

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). At the same time, the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)) (internal quotation marks omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). This case shall be analyzed in light of this standard of review.

### Background

Plaintiff indicates he spent five months at WCDC pending trial. ECF No. 15, p. 1. He states that Dr. Polite[8] refused to provide him with the medications he received during an earlier period of incarceration to treat his schizophrenia and bipolar disorder because of the cost of the medications. *Id.* Although provided alternative medications,[9] Plaintiff claims the drugs were

---

[8] This individual is not named as a Defendant in this case.

[9] Plaintiff claims he was instead prescribed Cogentin and Buteral. Cogentin (benztropine) is used to treat tremors, muscle rigidity, and restlessness sometimes caused as a side effect of other antipsychotic medications. *See* http://whatmeds.stanford.edu/medications/benztropine.html. An internet search does not reveal information specifically related to a psychotropic medication known as Buteral.

ineffective and that as a result, he frequently got "in trouble" and "was constantly going to the Captain's office." *Id.* He also complains that it took "some time" for WCDC to schedule him to see mental health professionals, and that as a result he began to hear voices and become paranoid. ECF No. 1, p. 3.

Plaintiff provides no specific allegation against Defendant Autrey; it appears he named her in his lawsuit based on her role as the Health Services Administrator ("HSA") for Conmed at WCDC. In her affidavit, Defendant Autry avers that her responsibility as HSA includes the maintenance of medical records. She also indicates that it is within the scope of Conmed's business to seek records related to prior care in order to verify diagnoses and medications as well as previous care provided to WCDC prisoners. ECF No. 13-3, pp. 1-2.

The records provided indicate that on February 25, 2014, Conmed personnel obtained Plaintiff's authorization to release his mental health records from his previous place of confinement, Coastal State Prison.[10] The records were received on March 3, 2014, and revealed that Plaintiff was diagnosed with several psychiatric disorders[11] between April of 2010 and September of 2013,[12] for which he was prescribed Cogentin, Geodon[13] and Risperdal.[14]

---

[10] The prison is located in Savannah, Georgia. *See* http://www.yellowpages.com/savannah-ga/mip/coastal-state-prison-27076641?sem=tas%3Dgoogle%26headingcode%3D0000000%26utm_type%3Ds%26utm_medium%3Dc%26utm_account%3DYPC+-+DSA+MCC%26utm_campaign%3DDSA+-National-+All+Web%26utm_adgroup%3DAll+webpage+mip%26utm_kw%3Ddynamicads_category%26utm_matchtype%3Dbroad+match%26ad_level%3Dhigh.

[11] Diagnoses included antisocial personality disorder, paranoid schizophrenia, depressive disorder and psychotic disorder. ECF No. 13-6, p. 1.

[12] In addition to Coastal State Prison, Plaintiff also was held at Georgia Diagnostic Classification Prison in Jackson, Georgia (*see* http://www.yellowpages.com/jackson-ga/mip/diagnostic-prison-464363672?sem=tas%3Dgoogle%26headingcode%3D0000000%26utm_type%3Ds%26utm_medium%3Dc%26utm_account%3DYPC+-+DSA+MCC%26utm_campaign%3DDSA+-National-+All+Web%26utm_adgroup%3DAll+webpage+mip%26utm_kw%3Ddynamicads_category%26utm_matchtype%3Dbroad+match%26ad_level%3Dhigh) and the Clayton, Georgia Day Reporting Center (*see* http://connect.ga.gov/link/portal/30060/30083/Article/24569/Corrections-Department-of-Probation-Operations-Office-Day-Reporting-Center-ID-30060-24569-CLAYTON.); *see also* ECF No. 13-6, p. 1.

Although the medical record is undated, it appears that after receiving the Georgia medical records, Conmed personnel met with Plaintiff, who indicated he felt paranoid due to his current environment and had experienced hallucinations but did not hear "command voices." ECF No. 13-4, p. 1. Although Plaintiff stated he had been prescribed Invega[15] while incarcerated in Georgia, the medication was not among those listed in the Georgia record. *Id.*

### Analysis

Under § 1983, liability is imposed on "any person who shall subject, or cause to be subjected, any person . . . to the deprivation of any rights...." 42 U.S.C. § 1983. The statute requires a showing of *personal* fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *West v. Atkins*, 815 F.2d 993, 996 (4th Cir.1987), rev'd on other grounds, 487 U.S. 42 (1988) (no allegation of personal involvement relevant to the claimed deprivation); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir.1977) (in order for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights ...") (quoting *Bennett v. Gravelle*, 323 F.Supp. 203, 214 (D.Md.1971), *aff'd*, 451 F.2d 1011 (4th Cir.1971)). Moreover, an individual cannot be held liable under 42 U.S.C. § 1983 under a theory of respondeat superior. *See Monell*, 436 U.S. at 690; *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir.2004) (no respondeat superior liability under § 1983). Plaintiff does not

---

[13] Geodin (ziprasidone) is an antipsychotic medication used to treat schizophrenia and the manic symptoms of bipolar disorder (manic depression).  *See* http://www.rxlist.com/geodon-drug/patient-images-side-effects.htm.

[14] Risperdal (risperidone) is used to treat mood disorders, schizophrenia, bipolar disorder, and irritability association with autistic disorder.  *See* http://www.webmd.com/drugs/2/drug-9846/risperdal-oral/details.

[15] Like Risperdal, Invega (paliperidone) is used to treat certain mood disorders, including schizophrenia and schizoaffective disorder, and may be used in combination with other medication to treat depression.  *See* http://www.webmd.com/drugs/2/drug-146745/invega-oral/details.

indicate what role, if any, Defendant played in his medical care.  Based on her affidavit, it appears that Defendant's duties are focused not on providing medical services, but rather concern the maintenance of medical records as well as requesting "outside" medical records that may assist health care providers in determining appropriate treatment.  Defendant is not alleged to have interfered with such care, and she is entitled to summary judgment.

This determination, however, does not end the court's inquiry.  During the five months he was confined at WCDC, Plaintiff was entitled to receive reasonable treatment for his serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97 (1976).  Failure to provide such treatment could indicate a "deliberate indifference to serious medical needs" resulting in "the 'unnecessary and wanton infliction of pain,'...proscribed by the Eighth Amendment." *Id*. at 104.  To show deliberate indifference, Plaintiff must establish that Defendant had actual knowledge or awareness of an obvious risk to Plaintiff's serious medical need and failed to take steps to abate that risk.  *See generally, Farmer v. Brennan*, 511 U.S. 825 (1994); *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101 (4th Cir. 1995).

As a confined individual, Plaintiff also had an Eighth Amendment right to be free from deliberate indifference to serious psychiatric needs.  *See Comstock v. McCray*, 273 F.3d 693, 702 (6th Cir. 2001).  Indeed, there is no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart.  *See Bowring v. Goodwin*, 551 F.2d 44, 47 (4th Cir. 1977).  Plaintiff was entitled to such treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial."

*Id*.  The right to treatment, however, is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*."  *Id.,* 551 F.2d at 47-48.  As previously noted, even if Plaintiff shows that he was denied psychological or psychiatric treatment, he must also demonstrate that the failure or refusal to provide treatment constituted deliberate indifference on behalf of Conmed personnel.

The medical record demonstrates that Plaintiff did receive psychiatric treatment while at WCDC.  Among the medication prescribed was Cogentin – the same medication given, in conjunction with other medications, by Coastal State Prison medical personnel during a two-year period ending in September of 2013.  Plaintiff did not follow up with mental health aftercare following his release from incarceration in Georgia (ECF No. 13-4, p. 1), and several months later was arrested in Maryland and held at WCDC, where Conmed personnel contacted Georgia prison authorities to obtain information on Plaintiff's previous treatment plan.  The medication Plaintiff sought was not among the medications prescribed to him at Coastal State Prison.

Plaintiff was not entitled to unqualified access to health care, *see Davis v. Williamson,* 208 F.Supp.2d 631, 633 (N.D.W.V. 2002), quoting *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)), and mere disagreement with the course of treatment does not state an Eighth Amendment claim. *See Taylor v. Barnett,* 105 F.Supp.2d 438, 487 (E.D. Va. 2000), citing *Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985)).

Nothing more is constitutionally required.  Accordingly, Defendant's dispositive Motion shall be granted, by separate Order to follow.

<u>November 10, 2014</u>                                            _____/s/_____
                                                                                          DEBORAH K. CHASANOW
                                                                                          United States District Judge